**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**STEPHEN J. DIBBS,**

      **Plaintiff,**

**v.**                                         **Case No: 8:12-cv-2851-T-36TGW**

**HILLSBOROUGH COUNTY, FLORIDA,**

      **Defendant.**
_____

## <u>ORDER</u>

This cause comes before the Court on cross-motions for summary judgment filed by the parties in this matter.  Plaintiff Stephen J. Dibbs ("Dibbs" or "Plaintiff") filed a Motion for Partial Summary Judgment on Counts I and II ("Dibbs' Motion") (Doc. 35) and Defendant Hillsborough County, Florida ("the County" or "Defendant") filed a Motion for Summary Judgment ("the County's Motion") (Doc. 29).  Each party filed timely responses (Docs. 51 & 53) and the Court heard oral arguments on August 11, 2014.  Upon due consideration of the parties' submissions, including deposition transcripts, affidavits, memoranda of counsel and accompanying exhibits, and for the reasons that follow, Plaintiff's Motion for Partial Summary Judgment as to Counts I and II (Doc. 35) will be denied and Defendant's Motion for Summary Judgment (Doc. 29) will be granted in part and denied in part.

## I.    STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

### A.    The Keystone Community Plan

In 2001, Hillsborough County, Florida adopted a Community Plan ("the Plan") for the Keystone-Odessa area ("Keystone"), which is in northwestern Hillsborough County. Doc. 29 at p. 2; Doc. 37 at 62:24-25. [2] Plaintiff alleges that the Plan was supported by "NIMBYs." *Id.* at 26:16-23.  "NIMBY" stands for Not in My Back Yard, and refers to a group of individuals that Dibbs classifies as "radical non-development activists." *Id.* at 26:16-23. Dibbs testified that the NIMBYs classify Keystone as a rural community, but Dibbs describes the area as suburban. *Id.* at 38:12-25.

Dibbs believes that the NIMBYs created the Plan, in part, to keep minorities or low-income people from living in Keystone. *Id.* at 40:8-15, 45:9-46:6. Dibbs testified that four or five Keystone residents made comments to him about wanting to keep minorities out of the area. *Id.* at 40:23-43:4. While he knows minorities that live in Keystone, Dibbs believes that "Keystone is unaffordable for black people." *Id.* at 43:5-24. Dibbs also testified that minorities are "probably okay" in Keystone as long as they are rich. *Id.* at 43:21-44:10. Dibbs has made the County Commissioners aware of his concerns about discrimination in Keystone. *Id.* at 44:11-22.

Dibbs also believes that the Plan's rules are unfair and nitpicky. *Id.* at 48:2-24. For example, the Plan prohibits the building of concrete walls, even though concrete walls already exist in Keystone. *Id.* at 48:6-49:11. Dibbs also objects to the requirement of slanted parking spaces. *Id.* at 50:2-20. According to Dibbs, slanted parking restricts growth because you can fit fewer cars in a parking lot. *Id.* at 51:17-22. The Plan also prevents the widening of roads in Keystone, which Dibbs believes is also a method to limit growth and development. *Id.* at 52:7-21.

---

[1] The Court has determined the facts based on the parties' submissions, including deposition transcripts, affidavits and accompanying exhibits.

[2] The Plan was developed by the Hillsborough County City-County Planning Commission, which is the planning agency for the four local governments in Hillsborough County, and adopted by Hillsborough County.

Dibbs attacks the Plan's provisions that restrict access to public water and sewer, and prohibit development of property that's less than five upland acres. *Id.* at 58:4-60:20. According to Dibbs "[a]lmost every provision in the Plan is ridiculous, without common sense, and made to restrict or deny property owners." *Id.* at 57:1-3.

### B.   Dibbs' Land Use Issues

Following adoption of the Plan, Dibbs purchased three separate pieces of real property in Keystone: one parcel (21.6 acres) at Lakeshore and Wilcox ("the Lake LeClare property"); one parcel at Gunn Highway and North Mobley Rd. ("the Gunn Highway property"); and another parcel (300 acres) at Lutz Lake Fern Rd. and the Suncoast Expressway ("the Lutz Lake Fern property"). *Id.* at 33:19-35:16, 62:13-19. Dibbs was represented by counsel when he purchased these properties. *Id.* at 37:4-8. Dibbs testified that he was generally aware of the Community Plan at the time he purchased property in Keystone, but did not know how "restrictive" it was. *Id.* at 36:11-20. However, Dibbs also alleges that he attended some of the meetings regarding adoption of the Plan and requested that the Lake LeClare property he was planning to purchase not be included in the plan. Doc. 17 ¶ 24. Dibbs' request for exclusion from the Plan was denied. Doc. 53-2 at p. 7.   Additionally, Dibbs' representatives attended some of the meetings regarding adoption of the Plan. *Id.* at p. 4.

In March of 2006, Dibbs began the application process for turning the Lutz Lake Fern property into a "borrow pit" or "land excavation." *Id.* at p. 4, 10-11. To obtain approval for the project, Dibbs had to apply for permits through, at a minimum, Hillsborough County and the Southwest Florida Water Management District ("SFWMD"). Doc. 37 at 85:25-86:24. Dibbs' application to the County was completed in July of 2006. Doc. 53-2 at p. 4. Dibbs testified that approval of his application with the County was delayed because there were 100 year-old

easements that it took seven months for the County to eliminate. Doc. 37 at 87:3-6. Dibbs believes that this process should have only taken 30 minutes, not seven months. *Id.* at 87:7-16. Dibbs further believes that this delay was the result of the influence of the NIMBYs on the County's staff, the staff not liking him, and the department being understaffed. *Id.* at 89:7-24, 90:7-17, 93:4-9. There was then a second delay due to an issue with mineral rights for sand. *Id.* at 94:15-22. Dibbs testified that the County's motivation for the second delay was to prevent him from getting a contract to provide services to the new Steinbrenner school. *Id.* at 94:15-18. Ultimately the mineral rights issue was resolved in Dibbs' favor. *Id.* at 96:17-24. Dibbs received approval from the County for the borrow pit in February of 2008. Doc. 53-2 at p. 4. Dibbs does not recall whether the SFWMD permit was obtained before or after February of 2008. Doc. 37 at 98:5-14. Dibbs was represented by counsel through this process as well. *Id.* at 88:6-12.

In 2008 and 2009 Dibbs made applications to opt out of the Keystone Community Plan and join the Lutz Community Plan. *Id.* at 113:10-14. Under the Lutz plan, Dibbs would have had more freedom to densely develop his property. *Id.* at 113:10-14. Dibbs' requests were denied. *Id.* at 114:5-17. Dibbs did not seek judicial review of these denials. *Id.* at 115:13-23.

Dibbs also sought to be included in an urban service area and requested a clearing permit for a wildlife habitat. *Id.* at 115:24-116:20. These requests were denied and Dibbs did not seek judicial review. *Id.* at 115:24-118:17.

In May of 2009, Plaintiff applied for a permit to bring 9,800 cubic yards of "organic mulch" onto his Lutz Lake Fern property. Doc. 53-2 at p. 6, 104. Dibbs received this permit on March 12, 2010. *Id.* at p. 6, 105-108. On September 3, 2010 Dibbs received a violation notice from the County indicating that staff witnessed two large trucks dumping mulch mixed with dirt on Dibbs' property, and that this activity violated Land Development Code 8.018.05D and condition 17 of Dibbs'

operating permit. *Id.* at p. 109-110. Dibbs contacted James Miller, an engineering specialist with the County, stating that he "did not violate anything" and referring Mr. Miller to the permit Dibbs was issued on March 12, 2010. *Id.* at p. 111. Dibbs requested a letter from the County stating that no violation occurred. *Id.* It is not clear from the record whether such a letter was ever issued.

In 2010 Dibbs requested that the Lake LeClare property be rezoned so that he could open a golf course and driving range. *Id.* at p. 7. This application was denied. Doc. 37 at 77:12-78:13.[3] Dibbs is now building single-family homes on the Lake LeClare property. *Id.* at 79:19-23.

In 2011, five air conditioning units were stolen from Dibbs Plaza – leaving tenants without air conditioning on Memorial Day weekend. *Id.* at 126:14-127:11; Doc. 17 ¶ 74. Dibbs found a contractor to install new units the very same day. Doc. 37 at 127:12-20. However, a month later, Dibbs received a fine for replacing the air conditioning units without a permit. *Id.* at 127:22-24. Dibbs called County Commissioner Hagan's office to challenge the fine and was told by Rich Reidy that he would "take care of it." *Id.* at 128:6-10. Dibbs has not paid the fine. *Id.* at 128:4-5.

Dibbs alleges that various County employees delayed or denied his applications because they did not like him. Doc. 37 at 29:1-30:24; 31:10-33:8. Dibbs believes that County Administrator Pat Bean did not like him because she is a "NIMBY lover." Doc. 37 at 24:18-25:5.

Dibbs filed this lawsuit in December of 2012 and filed his Amended Complaint (Doc. 17) on November 11, 2013.  He asserts the following five claims for relief: Count I (42 U.S.C. §1983 and Florida Constitutional claims for violation of due process as to the community plans); Count II (42 U.S.C. §1983 and Florida Constitutional claims for violation of equal protection); Count III (42 U.S.C. §1983 and Florida Constitutional as-applied claims for violation of due process); Count

---

[3] Plaintiff's testimony is contradictory as to whether he sought judicial review of this denial. Doc. 37 at 73:24-74:19, 81:8-11.

IV (42 U.S.C. §1983 and Florida Constitutional as-applied claims for violation of equal protection); Count V (action for inverse condemnation under the laws of Florida).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" Fed. R. Civ. P. 56(c)(2).  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party.  *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1164 (11th Cir. 2003).

Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it may affect the outcome of the suit under governing law.  *Id*.  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial . . . .'" *Hamm v. Johnson Bros.,* Case No. 6:06-cv-1348-Orl-28KRS, 2008 WL 2783366, 3 (M.D. Fla. July 17, 2008) (quoting *Sawyer v. Southwest Airlines Co.,* 243 F. Supp. 2d 1257, 1261 (D. Kan. 2003)). "The law is clear . . . that suspicion, perception,

opinion, and belief cannot be used to defeat a motion for summary judgment." *LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999).

"Cross motions for summary judgment do not change the standard." *Perez-Santiago v. Volusia Cnty.*, No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, 2 (M.D. Fla. Mar. 11, 2010) (internal citations omitted). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Id.* (internal quotations and citations omitted). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*

## III. DISCUSSION

Dibbs alleges that the Plan is unconstitutional because it is arbitrary and "not in the best interest of the health, safety and welfare of the citizens of Hillsborough County or the State of Florida or the United States of America." Docs. 35, 37 at 53:16-22, 57:1-7. Specifically, in his motion for summary judgment, Dibbs contends that the Community Plans are unconstitutional on their face because they are arbitrary and not rationally related to a legitimate governmental interest. Doc. 35. The County, on the other hand, argues that it is entitled to summary judgment because, *inter alia*, none of Dibbs' complaints rise to the level of constitutional violations. Doc. 29.

### A. Count I: Facial Due Process Challenge under § 1983

In Count I Plaintiff facially challenges the Plan as violating the due process provisions of the U.S. Constitution. Among other things, the County argues that these claims are time-barred, pursuant to *Hillcrest Prop., LLC v. Pasco County,* 754 F.3d 1279 (11th Cir. 2014), which held that the statute of limitations for facial attacks on land-use laws under §1983 begins to run when the statute, ordinance or regulation is enacted.

> Section 1983 claims are subject to a forum state's statute of
> limitations for personal injury claims. *Burton v. City of Belle Glade*,

> 178 F.3d 1175, 1188 (11th Cir. 1999). In Florida, a personal injury
> claim must be filed within four years. *Id.* This Court has held that a
> cause of action under § 1983 does not accrue until "the plaintiffs
> know or should know . . . that they have suffered [an] injury that
> forms the basis of their complaint." *Chappell v. Rich*, 340 F.3d 1279,
> 1283 (11th Cir. 2003) (citing *Mullinax v. McElhenney*, 817 F.2d
> 711, 716 (11th Cir. 1987)).

*Id.* at 1281. Here, the Community Plan was enacted in 2001[4], at least one year before Dibbs

purchased his land and eleven years before this action was filed. The injury, if any, occurred at the

time the ordinance was enacted and would have been apparent to the current landowner(s) upon

the ordinance's passage and enactment. Any future owners, such as Dibbs, cannot arguably have

suffered an injury because the "'price they paid for the [property] doubtless reflected the burden'"

of the Plan. *Id.* at 1283 (quoting *Guggenheim v. City of Goleta,* 638 F.3d 1111, 1120 (9th Cir.

2010)). It should be noted that Dibbs and/or his representative attended meetings regarding

adoption of the Plan and the Plan update. Indeed, Dibbs testified that he was "vaguely aware of

some plan" when he purchased the property in the Keystone area. Doc. 37 at 36:14-15.

   Plaintiff argues that the statute of limitations has not run because Plaintiff is alleging a

"continuing violation" and Plaintiff's time to bring a facial claim was renewed when the

Community Plan was re-adopted in 2012. However, neither of these theories are alleged in Count

I of Plaintiff's Amended Complaint. Instead, Plaintiff alleges that property owners were not

afforded a meaningful opportunity to be heard during the community plan *creation* process. See

Doc. 17, ¶ 87.  Plaintiff has listed distinct incidents where he feels that the Plan was applied to him

unfairly, and none of those incidents stem from the re-adopted Plan passed in May of 2012.

Furthermore, Count I does not include factual allegations that reference the re-adopted Plan. Thus,

---

[4] Dibbs' Amended Complaint suggests that he is bringing a facial challenge with regard to all community plans in
Hillsborough County. However, Dibbs has presented no evidence regarding any plans other than the Keystone-
Odessa Plan and has not argued that any other community plan was enacted within the statute of limitations.
Additionally, it is unclear as to how Plaintiff would have standing to challenge the other community plans.

the County was not on notice of a facial due process challenge to the re-adopted Plan from 2012 or a claim for continuing violations. Plaintiff cannot now rely on these new theories to combat the statute of limitations defense. *See Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion). Because the statute of limitations has expired as to the facial claim asserted in Count I, it is time-barred.  Accordingly, the County is entitled to summary judgment in its favor as a matter of law on Count I to the extent Dibbs asserts claims under 42 U.S.C. § 1983 and the U.S. Constitution.[5]

### B.    Count II: Facial Equal Protection Challenge under § 1983

#### 1.    *Statute of Limitations*

The County asserts that Count II is time-barred for the same reasons as Count I. Plaintiff, however, argues that the rule set forth in *Hillcrest* does not apply to equal protection claims. However, this question need not be resolved by this Court because, unlike Count I, Count II does include factual allegations regarding the re-adoption of the Plan in May of 2012. Thus, the statute of limitations has not run on this claim.

#### 2.    *Substantive Claims*

While not time-barred, Plaintiff's facial equal protection claim fails substantively.

> The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction equal protection of the laws." U.S. Const. Amend. XIV, § 1. If a statutory classification infringes on fundamental rights or concerns a suspect class, the Court will analyze the statute under a strict scrutiny standard. *Moore,* 410 F.3d at 1346. Otherwise, "the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest." *Bah v. City of Atlanta*, 103 F.3d 964, 966 (11th Cir. 1997) (citations omitted). . . . Suspect

---

[5] Each of Counts I through IV allege claims under federal *and* state law. Neither party has argued for summary judgment on those state law claims.

> classifications include race, alienage, national origin, gender, and
> illegitimacy. *Moore*, 410 F.3d at 1346 (citation omitted).

*Castaways Backwater Cafe, Inc. v. Marstiller*, Case No. 2:05-cv-273-FtM-29SPC, 2006 WL

2474034, 4 (M.D. Fla. Aug. 25, 2006).

In *United States v. Salerno*, the Supreme Court established that a "facial challenge to a

legislative act[6] is…the most difficult challenge to mount successfully, since the challenger must

establish that no set of circumstances exists under which the act would be valid." 481 U.S. 739,

745 (1987). This "no set of circumstances" test remains the standard in the Eleventh Circuit.

*GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1255, n. 19 (11th Cir. 2012). *See also*

*American Federation of State, County and Municipal Employees Council v. Scott*, 717 F.3d 851,

871 (11th Cir. 2013) (rejecting a union's argument that *Salerno* requires only a single

unconstitutional application of a drug test mandate to one employee in order to prove that the

mandate is facially unconstitutional as to all employees). "The mere possibility of a constitutional

application is enough to defeat a facial challenge…" *Harris v. Mexican Specialty Foods, Inc.,* 564

F.3d 1301, 1313 (11th Cir. 2009). To mount a "facial" equal protection challenge "a plaintiff must

assert that the mere enactment or application of an ordinance is unconstitutional, as it treats his

property differently than that of similarly-situated landowners." *Kolodziej v. Borough of Elizabeth,*

Civil Action No. 08-820, 2008 WL 4858295, 6 (W.D. Pa. Nov. 10, 2008).

> Equal protection claims can be brought by a "class of one" where
> the plaintiff alleges that the state treated the plaintiff differently from
> others similarly situated and that there is no rational basis for such
> difference in treatment. *Vill. of Willowbrook v. Olech,* 528 U.S. 562,
> 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). Under *Olech,* a
> "class of one" plaintiff may demonstrate that a government action
> lacks a rational basis in one of two ways: (1) "[negate] every
> conceivable basis which might support" the government action; or
> (2) demonstrate that the challenged government action was
> motivated by animus or ill-will. *Klimik v. Kent County Sheriff's*

---

[6] Both parties agree that the adoption and re-adoption of the Plan were legislative acts.

*Dep't*, 91 Fed. Appx. 396, 400 (6th Cir. 2004) (unpublished) (quoting *Bower v. Vill. of Mount Sterling*, 44 Fed. Appx. 670, 677 (6th Cir. 2002)).

*Rondigo, L.L.C. v. Casco Twp.*, Case No: 05-74775, 2008 U.S. Dist. LEXIS 25520, 26-27 (E.D. Mich. Mar. 28, 2008) (*affirmed by Rondigo v. Casco Twp.*, 330 Fed. Appx. 511 (6th Cir. 2009)).

"A property owner makes a facial challenge by claiming that a municipality knew exactly how he intended to use his property and passed an ordinance specifically tailored to prevent that use." *Kolodziej,* 2008 WL 4858295 at 6.

> If the plaintiff claims that the regulation acts against him or her because of race or another suspect class or that the regulation involves a fundamental right, then the regulation is subject to strict scrutiny. *See San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 16-17, 93 S. Ct. 1278, 1287-88, 36 L. Ed. 2d 16 (1973) and cases cited therein. However, if the claim is simply that the regulation treats the plaintiff different from someone else and neither a suspect class nor a fundamental right is involved, the regulation (and its classification) must only be rationally related to a legitimate government purpose. *Fry v. City of Hayward*, 701 F. Supp. 179, 181 (N.D. Cal. 1988).

*Eide v. Sarasota County*, 908 F.2d 716, 722 (11th Cir. 1990).

Plaintiff never actually argues that there is no possible constitutional application of the Plan – he just makes that unsupported statement in his response to the County's summary judgment motion. *See* Doc. 53 at p. 6. Following that statement, Plaintiff argues that this case should be controlled by two U.S. Supreme Court cases involving land use restrictions: *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928) and *Eubank v. Richmond*, 226 U.S. 137 (1912). Doc. 53 at p. 6. However, the Supreme Court's holdings in both of those cases rested largely on the fact that a small group of landowners were able to determine another landowner's rights with no redress. In both cases, if the owners of 2/3 of the land on a particular street or in a particular area voted to impose a restriction on the entire street or area, there was absolutely nothing the other landowners could do about it. This meant that if a single person bought two-

thirds of the land on a street, their single opinion tyrannically ruled the entire street. The situations in *Washington* and *Eubank* are easily distinguished from the situation here. While Dibbs argues that the Plan gives too much power to the NIMBYs, it is actually no different than any other political situation – those who are the most politically active are most likely to influence results. The NIMBYs are not given an explicit power by the Plan, and certainly they are not given unchecked power to decide land use by other landowners. All applications of the Plan are subject to review by the County Commission and the state court system. Thus, *Washington* and *Eubank* are not analogous, let alone controlling, here.

Dibbs alleges that the Plan makes housing more expensive and, therefore, discriminates against poor African-Americans – though he testified that African-Americans "with money" are "probably okay" under the Plan. This cannot provide the basis for a facial equal protection challenge. There is no statutory classification in the Plan based on wealth or race – or any other immutable characteristic. Further, there is no evidence in the record that the community plans have resulted in the concentration of affordable housing units in specified areas of the County.

Dibbs also argues that the Plan makes "some of the County-wide Comprehensive Plan policies or land development code regulations and processes unusable and inaccessible to landowners within their respective boundaries." Doc. 35 at p. 17. Thus, Dibbs contends that landowners in the Keystone area are a suspect class. There is no legal authority to support this contention. "Unlike most of the classifications that we have recognized as suspect, entry into this class . . . is the product of voluntary action." *United States v. Boffil-Rivera,* Case No. 08-20437-CR-GRAHAM/TORRES, 2008 WL 8853354, 7 (S.D. Fla. Aug. 12, 2008) (quoting *Plyler v. Doe*, 457 U.S. 202, 221 n.19 (1982)).

The Plan, which regulates state-created land-use rights, also does not implicate fundamental rights. *See Flagship Lake County Dev. Number 5, LLC v. City of Mascotte, Fla.,* 559 Fed. Appx. 811 (11th Cir. Mar. 13, 2014).

Accordingly, there is neither a suspect class distinction nor a fundamental right at issue and the Court applies a rational basis test to the Plan.

> The rational basis test is highly deferential. *See id.* (citation omitted). The legislation will be considered constitutional under this test if "'there is any reasonably conceivable state of facts that could provide a rational basis for' it." *Id.* at 1346 (quoting *FCC v. Beach Communications. Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)).

*Leib v. Hillsborough County Pub. Transp. Comm'n,* Case No. 8:07-cv-01598-T-24-TGW, 2008 WL 2686610, 3 (S.D. Fla. June 27, 2008).

Pursuant to Florida law, local governments are authorized to adopt optional plan elements to its comprehensive plan. *See* § 163.3177(1)(a), Fla. Stat.(2012). Comprehensive planning allows local governments to preserve, promote, protect, and improve the public health, safety, and general welfare. *See* § 163.3161(4), Fla. Stat. (2011). According to the plain language of the Keystone-Odessa Community Plan, the vision of the Plan was for the Keystone-Odessa community to continue to be a rural community. The protection of water resources was paramount given the many lakes, wetlands and rivers in the area.  Among the goals was the desire to protect the area from suburban and urban sprawl, maintain ecological balance, and preserve natural areas in residential lot development. Doc 53-4 at pp. 103-04. In general, the community plans were designed to supplement the County's Comprehensive Plan by discussing the special and unique features or characteristics of particular areas of the County, including examining the issues and problems facing the areas and providing strategies for solutions. *See, e.g*., Doc. 32-1.  The County sets forth several rational bases for applying each Plan to a specific geographic area. Hillsborough

County is a large and diverse area. The same land use restrictions that apply in downtown Tampa are not suited for areas like the Keystone-Odessa area. One is urban and the other is rural (or suburban as Dibbs contends). The Keystone-Odessa Plan was developed to guide development and provide guidelines for developers who were considering buying land in that area. Doc. 29-7 at p. 5; Doc. 29-18 at p. 14.  The Plan was the result of several public meetings which solicited input from Keystone residents.  Doc. 29-19 at pp. 3, 6. The Keystone Community supported the Plan. Doc. 29-14 at p. 2. While not everyone in the area might agree with the decisions made by the Planning Commission or the County Commission, those are political issues not constitutional issues.

Plaintiff has failed to show that there are no set of circumstances under which the Plan would be valid. Quite simply, Plaintiff has not established that the Plan, on its face, treats his property differently than that of similarly-situated landowners or that it lacks a rational basis. Accordingly, the County is entitled to summary judgment on Count II to the extent Dibbs asserts claims under 42 U.S.C. § 1983 and the U.S. Constitution.

### B.  As-Applied Challenges Under 42 U.S.C. § 1983

In Counts III and IV, Dibbs brings as-applied challenges to the Community Plans, again alleging violations of his due process and equal protection rights. Dibbs admits that he did not have standing to bring these claims until April 2, 2009 when "the Community Plans were applied to him" and the Board denied his request to be removed from the Keystone-Odessa Community Plan. Doc. 53 at p. 6. Accordingly, any actions prior to April 2, 2009 are not at issue under Counts III or IV.

### 1. Due Process

Though the pleadings are unclear, Plaintiff's counsel indicated at the oral argument that Plaintiff is attempting to assert both a substantive due process claim and a procedural due process claim.

### a. Substantive Due Process

Plaintiff's substantive due process claim fails because there is no fundamental right at issue here.

> The Due Process Clause of the Fourteenth Amendment only provides substantive due process protection against deprivations of fundamental rights. *Greenbriar Village, L.L.C. v. Mountain Brook, City,* 345 F.3d 1258, 1262 (11th Cir. 2003). Fundamental rights are those created by the Constitution; and it is well established that land use rights, as property rights generally, are state-created rights not subject to substantive due process protection. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972); *DeKalb Stone, Inc. v. County of DeKalb,* Ga., 106 F.3d 956, 959 (11th Cir. 1997).

*Flagship Lake County Dev. No. 5, LLC v. City of Mascotte,* Case No. 5:12-cv-188-Oc-10PRL, 2013 WL 1774944, 4 (M.D. Fla. April 25, 2013) (affirmed by *Flagship Lake County Dev. Number 5, LLC v. City of Mascotte, Fla.,* 559 Fed. Appx. 811 (11th Cir. Mar. 13, 2014)). This Court is bound to follow this precedent and, therefore, this claim fails.

Plaintiff's response to the County's Motion for Summary Judgment argues that the decisions made with regard to Dibbs are legislative rather than executive. *See* Doc. 53 at p. 9-10. If the actions were legislative then a substantive due process claim could exist even in the absence of a fundamental right.

> An exception to the general rule applies when "an individual's state-created rights are infringed by legislative act." *Id.* at 1273. In that scenario, "the substantive component of the Due Process Clause generally protects [the individual] from arbitrary and irrational action by the government." *Id.* By contrast, "[n]on-legislative, or

> executive, deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrarily and irrationally." *Id.* (internal quotation marks omitted).

*Flagship,* 559 Fed. Appx. at 816. Legislative acts usually apply to a large segment of, if not all of, the population. Legislative acts also involve policy-making instead of mere administrative application of existing policies. *Kenter v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014). On the other hand, executive acts usually arise from the ministerial or administrative activities of the executive branch, such as individual acts of zoning enforcement, and apply to a limited number of people, usually only one person. *Id.* The alleged actions at issue in Count III are:

1.    Denial of the Lake LeClare rezoning for a driving range;

2.    Delay of the land excavation approval;

3.    Imposition of conditions such as prohibiting trucks from traveling west;

4.    *Ad hoc* enforcement and unjustified rules regarding "peat" and "mulch" against Dibbs;

5.    Denial of Dibbs' requests to remove his Lutz Lake Fern property from the Odessa Plan, allow water and sewer connections, and increase the development potential;

6.    Refusal to lift Significant Wildlife Habitat requirements and imposition of an irrebuttable presumption of SWH status for property mapped as SWH;

7.    Refusal to allow credits for street trees; and

8.    Imposition of a fine on Dibbs for replacing stolen air conditioners

*See* Doc. 17 at p. 28.

Just like the actions at issue in *Flagship,* these actions are not legislative because they only impact Dibbs' property and do not involve policy-making. 559 Fed. Appx. at 816. The actions at issue are either executive or quasi-judicial. Based on the evidence before the Court, the denial of

the Lake LeClare rezoning for a driving range was quasi-judicial and the denial of Dibbs' requests to remove his Lutz Lake Fern property from the Odessa Plan was quasi-judicial. The delay in approving the borrow pit permit and other conditions associated with the approval of the land excavation/borrow pit was executive. Likewise, the refusal to lift Significant Wildlife Habitat requirements, refusal to allow credits for trees, and imposition of a fine for replacing stolen air conditioners were executive acts.

The case law relied upon by Plaintiff supports a finding that these actions are non-legislative. Under Florida law, zoning decisions are typically considered legislative. *Bd. of County Comm'rs v. Snyder*, 627 So. 2d 469, 471 (Fla. 1993). However, "unlike initial zoning enactments and comprehensive rezonings or rezonings affecting a large portion of the public, a rezoning action which entails the application of a general rule or policy to specific individuals, interests, or activities is quasi-judicial in nature." *Id.* In addition to relying on *Snyder,* Plaintiff relies on *Martin County v. Yusem* in which the Florida Supreme Court answered the following certified question in the negative: "Can a rezoning decision which has limited impact under *Snyder*, but does require an amendment of the comprehensive land use plan, still be a quasi-judicial decision subject to strict scrutiny review?" 690 So. 2d 1288, 1289 (Fla. 1997). A key element of the *Yusem* decision that is not present in the current action is that "[n]either party argue[d] that this requested zoning change did not require an amendment to the Plan." *Id.* at 1290, n1. Here, there is no evidence that any of Dibbs' requests required amendments to the Plan itself – only that he was seeking individual variances from the Keystone-Odessa Community Plan. Thus, the decisions at issue here were not legislative and the substantive due process claim asserted in Count III fails.

b.  Procedural Due Process

"A § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Flagship,* 2013 WL 1774944 at 2 (citing *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir. 2003)).

> In the case of a procedural due process claim, the constitutional violation is not the deprivation of a protected interest in "life, liberty, or property" . . . . Rather, "what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon,* 494 U.S. at 125, 110 S. Ct. at 983 (emphasis in original). Accordingly, as in this case, if adequate state remedies were available, but a plaintiff did not avail itself of them, that plaintiff "cannot rely on that failure to claim that the state deprived [it] of procedural due process." *Cotton,* 216 F.3d at 1331.

*Flagship,* 2013 WL 1774944 at 3 (footnote omitted). As previously discussed, there is no constitutionally-protected liberty or property interest at issue here. Furthermore, it is undisputed that Plaintiff could have sought review of the County's decisions in Florida state courts but chose not to because he allegedly could not afford to.

> The existence of a state judicial procedure to review, remand, and/or set aside agency decisions, including zoning decisions, and to "[o]rder such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld", Fla. Stat. § 120.68(6)(a)(2), is sufficient to redress [the plaintiff] for the deprivation alleged and is sufficient to satisfy the Fourteenth Amendment's Due Process Clause.

*Id.* Plaintiff's claim that the available review is insufficient because it is limited and must be sought within 30 days of the quasi-judicial hearing is unavailing. The fact that it is possible for a litigant to forfeit a remedy by virtue of the operation of reasonable state procedural rules, does not mean that the post-deprivation remedy is inadequate. *Holloway v Walker,* 784 F2d 1287 (5th Cir. 1986). Furthermore, the fact that state procedures do not afford relief identical to that sought in a civil

rights action does not make those procedures constitutionally inadequate. *National Communication Systems, Inc. v Michigan Public Service Com.*, 789 F2d 370 (6th Cir. 1986).

Florida provides adequate state remedies, such as writs of certiorari or writs of mandamus, for review of the County's actions at issue here. Accordingly, Plaintiff's as-applied due process claims fail, and the County is entitled to summary judgment on Count III to the extent Dibbs asserts claims under 42 U.S.C. § 1983 and the U.S. Constitution.

### 2. Equal Protection

 [T]he Equal Protection Clause requires government entities to treat similarly situated people alike. Equal protection claims are not limited to individuals discriminated against based on their membership in a vulnerable class. Rather, we have recognized any individual's right to be free from intentional discrimination at the hands of government officials. *See, e.g., E & T Realty v. Strickland*, 830 F.2d 1107, 1112 (11th Cir. 1987). To prevail on this traditional type of equal protection claim, basically a selective enforcement claim, that the City's Ordinance was applied to them, and not other developments, Plaintiffs must show (1) that they were treated differently from other similarly situated individuals, and (2) that Defendant unequally applied a facially neutral ordinance for the purpose of discriminating against Plaintiffs. *See Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996).

*Campbell v. Rainbow City,* 434 F.3d 1306, 1313-1314 (11th Cir. 2006).

While Plaintiff alleges that the Community Plan negatively affects minorities in general, Plaintiff does not identify himself as a member of any suspect class. Nor does Plaintiff indicate that the County has treated him differently based on any immutable or protected characteristic. Instead, Dibbs alleges that his applications were delayed and/or denied simply because a number of people working for the County have not liked him since he won a lawsuit against the County in 1997. Thus, Dibbs is relying on the theory that he is a "class of one."

To prove a "class of one" claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him. . . .

> With respect to the first prong, we have frequently noted that the "similarly situated" requirement must be rigorously applied in the context of "class of one" claims. *See, e.g., Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1275 (11th Cir. 2008); *Griffin,* 496 F.3d at 1207. Employing "[t]oo broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties." *Griffin,* 496 F.3d at 1203.

*Leib,* 558 F.3d at 1306-1307.

That the plaintiff was treated differently than a similarly situated comparator is a crucial element of an as-applied equal protection claim. *See Flagship*, 2013 WL 1774944 at 4 (citing *Crystal Dunes Owners Ass'n Inc.v. City of Destin, Fla.,* 476 Fed. Appx. 180, 184-85 (11th Cir. 2012)). "'To be considered similarly situated, comparators must be *prima facie* identical in all relevant respects.'" *Campbell,* 434 F.3d at 1314 (internal quotations omitted).

Plaintiff asserts that summary judgment is improper here because determining whether another landowner is similarly situated is a factual issue that should be determined by the jury. Doc. 53 at p. 17. However, Plaintiff does not identify a single comparator that he believes to be similarly situated. Instead, he only points to lists of people who have made applications to opt out of community plans in the past. *See* Doc. 53-2. He also identifies other borrow pits that have been approved in a shorter time period this his approval. These lists are not sufficient for any jury to find a similarly situated landowner. The "comparators" identified in Dibbs' Second Affidavit, landowners who were allegedly permitted to opt out of community plans, are outside of the Keystone area. *Id.* at p. 8-9. Dibbs does not know of any landowners in the Keystone area that were permitted to opt out of the Plan. Doc. 37 at 64:14-23. Thus, Plaintiff has not presented any similarly situated landowners who have been treated differently.

There is no genuine issue of material fact to be presented at trial – on the record before this Court there are essentially no similarly situated individuals who were treated differently.

Accordingly, the County is entitled to summary judgment on Count IV to the extent Dibbs asserts claims under 42 U.S.C. § 1983 and the U.S. Constitution.

### C.      Remaining State Law Claims

The Court has disposed of all federal claims and the only claims remaining are those brought under the Florida Constitution and Florida common law[7].  The resolution of these claims will require analysis of Florida constitutional law as applied to Hillsborough County. The Supreme Court has advised that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). Therefore, the Court will decline to exercise its supplemental jurisdiction over these remaining claims. *See* 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction.").  These claims will be dismissed without prejudice to being refiled in an appropriate state court.

### IV.    Conclusion

For the reasons stated herein, it is hereby **ORDERED** and **ADJUDGED** as follows

1.   Plaintiff's Motion for Partial Summary Judgment as to Counts I and II (Doc. 35) is **DENIED**;

2.   Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED** in part and **DENIED** in part;

---

[7] Count V is a Florida "takings" claim. Doc. 53 at p. 18.

3. The Clerk is directed to enter judgment in favor of Defendant Hillsborough County, Florida, on the portions of Counts I through IV that are based on 42 U.S.C. § 1983 or the U.S. Constitution;

4. The remaining state law claims in Counts I through V are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over the state law claims; and

5. The Clerk is directed to close the file.

**DONE** and **ORDERED** in Tampa, Florida on December 12, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record